In the case at bar the defendant simply exercised dominion and control over the real property of which he was rightfully in possession and to the extent only of forbidding the plaintiff to enter thereon at an unsuitable time, when such entry would do the defendant serious damage.

We think that under the circumstances the defendant was justified in doing as he did and cannot thereby be held liable for a conversion of the property. We have examined the cases cited by the respective counsel, but in none of them were the facts similar to those in the case at bar. The finding of the justice was not against the weight of evidence and the County Court erred in reversing the judgment and ordering the new trial.

The order and judgment of the County Court should be reversed, and the judgment of the justice court affirmed, with costs to the appellant in this court and in the County Court. All concur.

---

(158 App. Div. 105.)

PAYNE v. LEHIGH VALLEY R. CO.

(Supreme Court, Appellate Division, Third Department.   September 10, 1913.)

1. MASTER AND SERVANT (§ 180*)—LIABILITY FOR INJURIES—NEGLIGENCE OF "VICE PRINCIPAL."

Under Railroad Law (Consol. Laws 1910, c. 49) § 64, providing that, in actions against a railroad corporation for personal injuries to an employé or death resulting therefrom, it shall be held that persons intrusted by such corporation as a part of their duty for the time being, with physical control or direction of the movement of a locomotive engine, car, train, etc., are vice principals of the corporation and not fellow servants of the injured or deceased employé, the engineer of a freight train was a vice principal as to the conductor of such train.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 359–361, 363–368; Dec. Dig. § 180.*

For other definitions, see Words and Phrases, vol. 8, pp. 7313–7316.]

2. MASTER AND SERVANT (§ 278*)—ACTIONS FOR INJURIES—SUFFICIENCY OF EVIDENCE.

In an action for the death of the conductor of a freight train from injuries sustained while between two cars for the purpose of uncoupling them, evidence that the engineer of the train, after allowing the engine to remain at rest for several minutes, without giving any warning suddenly reversed it, although a rule of the company provided that the engine bell must be rung when an engine was about to move, supported a finding of negligence on the part of the defendant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.*]

3. MASTER AND SERVANT (§ 286*)—ACTIONS FOR INJURIES—SUFFICIENCY OF EVIDENCE.

In an action for the death of the conductor of a freight train caused by injuries sustained while between two cars for the the purpose of uncoupling them, evidence as to a projecting bolt and the defective condition of the coupling apparatus and the sill of one of the cars *held* to make a question for the jury as to defendant's negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4. MASTER AND SERVANT (§ 106\*)—LIABILITY FOR INJURIES—DEFECTIVE APPLIANCES.**

A railroad company was not relieved of liability for the death of an employé caused by defects in a freight car, which was being drawn over its road, by the fact that such car was not its own.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 193–198; Dec. Dig. § 106.\*]

**5. MASTER AND SERVANT (§ 289\*) — ACTIONS FOR INJURIES — QUESTIONS FOR JURY.**

In an action for the death of the conductor of a freight train caused by injuries sustained while uncoupling cars by the backing of the train, evidence *held* sufficient to make a question for the jury as to whether deceased was negligent.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089, 1090, 1092–1132; Dec. Dig. § 289.\*]

Smith, P. J., dissenting.

Appeal from Trial Term, Madison County.

Action by Alice M. Payne, as administratrix of Frederick Payne, deceased, against the Lehigh Valley Railroad Company. From a judgment for plaintiff and order denying a motion to set aside the verdict and for a new trial, defendant appeals. Affirmed.

Argued before SMITH, P. J., and LYON, HOWARD, and WOODWARD, JJ.

Taber & Brainard, of Auburn, for appellant.

Miller & Matterson, of Syracuse, for respondent.

LYON, J. On the evening of January 29, 1910, an extra freight train of defendant, of which plaintiff's intestate was the conductor, became stalled in the snow on the upgrade at Black Tavern crossing while on its way from Cortland to Canastota. For the purpose of lightening the load upon the engine, and with a view of drawing the train in sections and placing a portion of it upon a siding not far from the crossing, the engineer directed the train uncoupled about eight cars back from the engine, which was about the middle of the train, and then endeavored by backing and pulling to move this section of the train, but was unable to do so. After three or four attempts had been thus made, decedent, who stood on the crossing watching the engineer's efforts, stepped between a box car and a gondola car, two or three car lengths from the rear of the shortened train, for the purpose of uncoupling these cars and further relieving the engine. While decedent was between these cars the engineer backed the engine, and decedent was caught between the cars, and a bolt, which projected from the box car, was forced through the walls of his abdomen, causing a hemorrhage which produced his death a few minutes later. This action has been brought by his administratrix to recover damages on account of his death. The trial resulted in a judgment for the plaintiff.

The material points relied upon by the defendant as grounds for a reversal of the judgment are the absence of negligence upon the part of defendant, the negligence of decedent, exceptions to rulings of the

trial justice, and the improper action of plaintiff's counsel during the trial of the action.

[1] As to the negligence of the defendant, the engineer was not a fellow servant of the decedent for whose negligence the defendant was not responsible, but in operating the engine he was a vice principal as to the conductor. Railroad Law (Consol. Laws 1910, c. 49) § 64.

[2] That the evidence fully justified the finding of the jury that the defendant was guilty of negligence cannot be seriously questioned. Rule 30, governing the operating of defendant's trains, provided:

"The engine bell must be rung when an engine is about to move."

Concededly no warning signal was given by the engineer before backing his engine at the time decedent was injured. Witnesses called by the plaintiff testified that, after the last unsuccessful effort to move the section of the train, the engineer allowed his engine to remain at rest for several minutes and then, without giving any warning that he was about to move the engine, suddenly reversed it, inflicting the injury which caused decedent's death.

[3] Furthermore, it appears that attached to the front sill of the box car, which was a foreign car, by four bolts were two blocks one above the other, each about 4½ inches in thickness, constituting what was commonly known as a dead block or stop block, underneath which the drawhead was located, and that one of these bolts, bearing two nuts and a washer, projected 3½ inches beyond the face of the dead block and three-fourths of an inch beyond the surface of the outside nut, which some of the witnesses testified was an unusual projection not commonly to be found upon such cars upon defendant's road.

[4] The fact that a car which is being drawn over its road was not its own does not relieve a defendant from liability for the consequences of a defect which exists thereon. Gottlieb v. N. Y., L. E. & W. R. R. Co., 100 N. Y. 462, 3 N. E. 344. Attached to the rear sill of the gondola, which was defendant's car, were two iron bumpers, or dead blocks, 12 inches in thickness, between which the drawhead was located. One of plaintiff's witnesses testified that in such a construction the drawheads became bumpers and took all the resistance of the cars when they came together, and that, when the drawheads were in good condition and coupled together, there was sufficient room for a man to stand sideways between the dead blocks of the two cars and reach over the coupler and get hold of the angle cock of the air hose. The space between these cars, within which a person uncoupling them might safely stand, was lessened by this projecting bolt and was much more lessened by the defective condition of the coupling apparatus and the shattered condition of the sill of the gondola; certain witnesses testifying that the timbers constituting the draft rigging underneath the car had spread so that when a coupling was made the drawhead was no longer held 10 or 12 inches from the sill, as it should have been, but was forced back against the sill, wearing the sill away to the depth of several inches and allowing the drawhead to be driven back into the sill and to be forced under the car 6 or 7 inches farther

than it would have been had the coupling apparatus and the sill been in proper condition. There was evidence also that there was no fresh cutting of the sill apparent, but that the surface was dark, indicating that such condition had existed for some time.. If defendant could have discovered the defective condition of the coupling apparatus by reasonable and proper tests, care, and inspection, it must be deemed to have had knowledge thereof before and at the time decedent's injury was sustained, and when proven upon the trial constituted prima facie evidence of negligence upon the part of defendant. Railroad Law, § 64, supra. The effect of lessening by six or seven inches the space between the cars within which decedent might safely stand is apparent in view of the testimony of the surgeon, who examined the body of decedent, that the penetration of the bolt into the body did not exceed one inch. While the evidence introduced by the plaintiff as to the negligence of the defendant was more or less controverted by the proofs of the defendant, yet such issue was clearly one for the determination of the jury.

[5] A more serious question arises as to the negligence of plaintiff's intestate. By a rule of the defendant he was responsible for the movements and safety of his train which on a stormy winter evening in January was stalled in the snow on an upgrade, blocking the track. There was but one trainman to assist him; the other having been sent to the rear of the train with a flag. The engineer having failed in several attempts to move the eight cars, it became necessary to lessen the number, and decedent thereupon stepped between the cars to uncouple them. He gave no signal to the engineer of his intention and, as the injury on the right side of the abdomen would indicate, was undoubtedly standing sideways, facing the rear of the train for the purpose of reaching across the coupling and closing the angle cock of the air hose with his right hand, when the engineer forced the cars together. It is the claim of the defendant that, in going between the cars to uncouple them, decedent was acting outside the line of his employment; that he was endeavoring to perform the act in an improper and careless manner; and that he was negligent in stepping between the cars without having given the engineer the stop signal, indicating that the train was not to be moved until a further signal had been given. In support of these contentions defendant calls attention to certain of defendant's rules, introduced in evidence, with which concededly decedent was familiar. None of these rules, however, in any way prohibited a conductor from coupling or uncoupling cars, but upon the other hand provided that conductors must assist in making up their trains when necessary. The duties of decedent, instead of having been supervisory, as appellant contends, seem to have been active and general, as indicated by the rules introduced in evidence, extending even to the unloading of freight, in which work the trainmen were by rule required to assist the conductor. The plaintiff introduced evidence to the effect that the manner in which decedent was attempting to perform the act of uncoupling the cars and closing the angle cock, which latter act was advisable, was the customary one upon defendant's railroad, and that, had the cars been in proper condition, there

would have been sufficient space within which decedent might have stood and performed the operation in safety. Defendant called witnesses who testified that it was decedent's duty to give the stop signal before stepping between the cars. Upon the part of plaintiff, however, there was testimony to the effect that, the engineer having held the engine passive for several minutes, decedent had the right to conclude that the engineer had abandoned the attempt to move the eight cars, and that the engineer as vice principal would observe the rule requiring him to give a signal by ringing the bell when about to move the engine, and hence that it was safe for decedent to enter between the cars and uncouple them without decedent having first given the stop signal. Of two disinterested witnesses who were watching the train, one testified that the engine stood still from three to five minutes, and the other that it stood still from four to five minutes before backing up at the time decedent was caught between the cars. That decedent had the right to expect that rule 30 would be observed after the engine had become passive is also established by the testimony of the engineer, as follows:

"We keep trying to move it (the engine) until we come to the conclusion ourselves that we can't move it; then we give it up and let the engine lie dormant. Before we move our engine again in any way we are supposed to give a signal. When the engine has been at a standstill, the signal on the Lehigh requires that the bell shall be rung before the engine is moved."

Evidence was also introduced by plaintiff that it was customary upon defendant's road, when an engine had remained stationary for three or four minutes after backing and filling, for a person to walk between cars without signaling the engineer, and that it was also customary under such conditions for the engineer to give a signal before moving his engine. Under a fair construction of the evidence most favorable to plaintiff, to which she is entitled upon this appeal, the question as to the negligence of the decedent was plainly one for the consideration of the jury.

The charge of the trial justice was able and impartial and clearly covered all the issues involved, and there are no exceptions calling for a reversal of the judgment. While some of the remarks of plaintiff's counsel made during the trial of the action, of which defendant complains, are perhaps justly the subject of criticism, yet we do not think that the rights of the defendant were seriously prejudiced thereby.

The verdict was fully warranted by the evidence, and the judgment and order appealed from should be affirmed. All concur, except SMITH, P. J., dissenting. KELLOGG, J., not sitting.